In re the **STATE–RECORD COMPANY, INC.; the South Carolina Press Association; the Evening Post Publishing Company; the Greenville News–Piedmont Company; the Spartanburg Herald–Journal, A Division of The New York Times Company, Inc., Petitioners.**

In re the **STATE–RECORD COMPANY, INC.; the South Carolina Press Association; the Evening Post Publishing Company; the Greenville News–Piedmont Company; the Spartanburg Herald–Journal, A Division of The New York Times Company, Inc., Petitioners.**

Nos. 90–5908, 90–5909.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 15, 1990.

Decided Oct. 16, 1990.

As Amended Oct. 16, 1990.

---

* The practice in this court is to vacate the panel opinion when a petition for panel rehearing is granted. Such an order was inadvertently not entered when panel rehearing was granted on September 20, 1990 in this case.

Jay Bender, Belser, Baker, Barwick, Ravenel & Bender, Columbia, S.C. (S. Markey Stubbs, on pleadings), for petitioners.

William A. Coates, Love, Thornton, Arnold & Thomason, Greenville, S.C., Ben A. Hagood, Asst. U.S. Atty., Columbia, S.C. (E. Bart Daniel, U.S. Atty., Sherri Lydon, Asst. U.S. Atty., on pleadings), for respondents.

Before WIDENER, CHAPMAN and NIEMEYER, Circuit Judges.

PER CURIAM:

The above matters have been consolidated because both involve petitions by the news media for relief from "gag orders" issued in similar criminal prosecutions pending in the United States District Court for the District of South Carolina. The petitioners, publishers of daily newspapers of general circulation within the State of South Carolina, seek to vacate orders by United States District Judges in the two criminal actions: *United States v. Luther Langford Taylor* (No. 90–5908) and *United States v. Ennis Maurice Fant, Larry Blanding, and Benjamin J. Gordon* (No. 90–5909).

These defendants are now, or formerly were, elected members of the South Carolina General Assembly, and each has been charged with violation of Federal statutes, particularly the Hobbs Act. The investigation leading to these indictments, and all activities since the indictments, have produced intense coverage and comment by all news media in South Carolina.

On September 4, 1990, defendant Taylor, through his attorney, filed a "Motion for Gag Order" in which he .

> moves that the court enter its order specifically directing counsel for the parties, including the United States Attorney, and any indicted defendant in this or any companion case, including but not limited to Robert Kohn, Daniel Winstead, Robert Brown, and Richard Lee, and any attorneys representing the same, from making any extra-judicial statement.
>
> This motion is based upon the grounds that any such statement will likely interfere with the rights of this defendant to a fair trial.

Although this motion mentions only extra-judicial statements by the parties and their attorneys, the request for relief was extended on or about September 10, 1990. At that time Taylor objected to release of certain information filed by the United States Attorney in a response to a motion for "Brady material" and for any evidence the government intended to use under Federal Rule of Evidence 404(b) of "other crimes, wrongs, or acts" that might be used to prove motive, opportunity or intent. Taylor contends that information contained in the government's response to these motions was prejudicial to him and should not

be admitted into evidence, and if the government's response was not sealed, it would be the immediate subject of intense media coverage and endanger his right to be tried by an impartial jury.

The press had notice of the September 4 request for the gag order, and a hearing was held to consider this motion on September 24, 1990. This hearing was in open court and well attended by the press. No member of the press requested a delay of the hearing or requested the right to be heard, and there was no attorney present representing any of the media.

At the conclusion of that hearing the trial judge stated: "It is now 4:12 p.m. and I am issuing a verbal order, effective at this time. Neither the attorneys nor the defendant may engage in any further conversations with any news media."

The following day the trial judge ordered "that the clerk of the Court is to seal all documents, including notices, which have been filed in this case prior to September 24, 1990 and that all documents, including notices, which are subsequently filed in connection with the case are to be sealed at the time of filing." The order further provided that copies of the documents filed would be distributed to the attorneys and directed the attorneys, members of their staffs, and court personnel not to publish, reproduce or distribute any information regarding the case to the news media. By a subsequent order of the same date, the judge directed the clerk to advise the public and the news media of any and all public courtroom proceedings in the case.

The following day the State Record Company and the South Carolina Press Association moved to intervene and to seek reconsideration of the verbal order and the written orders sealing the records. The district court heard these motions on September 27, 1990, and the following day issued an order denying relief. In this order the district court sealed the list of prospective jurors, the written questionnaire forwarded to prospective jurors, and the answers to the juror questionnaires, but provided that this material be made available to the attorneys and the defendants.

In his order of September 28, 1990, the trial judge found that, "[b]oth the prosecution and the defense have used press conferences, news releases and information contained in public documents to disseminate to the media information which may prejudice potential jurors in this case." The court expressed its concern over the ability of the defendant to receive a trial by an impartial jury in the State of South Carolina and recognized the tension between the defendant's Sixth Amendment right to a fair trial and the First Amendment right of the media and the public of free access to information: "By leaving the courtroom open, but sealing the record in this case, this court hopes to strike a balance which will provide the defendant with his right to a fair trial as well as to provide the citizens of South Carolina with their right to information on the pre-trial proceedings."

The court applied a "reasonable likelihood" test, finding that there was a reasonable likelihood that irreparable damage to the defendant's right to a fair trial would result if the mandates of its order were not carried out. The court felt that by sealing the record and restricting the ability of the participants to comment on the case, it reduced the likelihood of prospective jurors being exposed to inflammatory and prejudicial material which would not be admissible at trial. The court rejected the suggested alternative that the court redact potentially prejudicial and improper material from the documents because the court did not have the time or the resources to fairly edit the documents for the sake of the news media.

The petitioners have appealed this ruling and we have consolidated the Taylor case with the cases of Fant, Blanding and Gordon, because another South Carolina District Judge entered a very similar order in the Fant, et al., case.

I

██ "Mandamus is the preferred method for review of orders restricting press activity related to criminal proceedings...."

*In re Washington Post Co.*, 807 F.2d 383, 388 (4th Cir.1986).

Lack of notice is not an issue in the present case. Various reporters and other media personnel were present in court when the motion for a "gag order" was first discussed, and final action on the order was not taken until three weeks later. Although the original motion was to stop extra-judicial statements by the attorneys and the parties, this motion was expanded in open court to cover documents the government filed in response to requests for "Brady material" and Federal Rule of Evidence 404(b) material. The media used some of the material furnished in these documents to write stories which are claimed to be prejudicial to the defendant.

Petitioners do not contest that part of the district court's order which prevents extra-judicial statements by the attorneys and the individual parties, nor do they object to the order sealing the list of prospective jurors and the answers to the juror questionnaire. Petitioners direct their attack to that part of the order which seals the records of the district court and prevents disclosure of documents filed in the cases "prior to September 24, 1990 and all documents including notices, which are subsequently filed in connection with this case...." This sealing also covers the docket entry sheet maintained by the Clerk of Court.

## II

█ Petitioners claim a First Amendment right of access to the records, rather than a common law right, because they are all engaged in the news dissemination business. We have previously held that the common law does not provide as much access to the press and public as does the First Amendment. Under the common law the trial court's denial of access to documents is reviewed for abuse of discretion, but under the First Amendment, such denial is reviewed *de novo* and must be necessitated by a compelling government interest that is narrowly tailored to serve that interest. *In re Washington Post Co.*, 807 F.2d at 390.

The more rigorous First Amendment standard applies to documents filed in connection with plea hearings and sentencing hearings in criminal cases, *id.* at 390, as well as pretrial proceedings. *In re Charlotte Observer*, 882 F.2d 850, 852 (4th Cir. 1989).

In *Charlotte Observer*, we considered a court's closure of a scheduled hearing and the sealing of certain documents filed in support of a motion to change venue and concluded:

> Because the public's right to access to criminal trials and pretrial proceedings is protected by the first amendment, the proceedings here at issue could not properly be closed except on the basis of specific judicial findings that " 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " ... The "higher value" asserted here as the basis for the closure orders is the defendants' sixth amendment right to trial by an impartial jury, specifically by one not so biased against defendants by pretrial publicity as to make a fair trial impossible. In assessing whether closure is appropriate in the face of such conflicting constitutional claims, there is an ingoing presumption in favor of openness. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973 (1980). Though this presumption may be overcome in a particular case and a pretrial proceeding closed in order to protect a defendant's right to a fair trial, *see, e.g., Gannett Co. v. DePasquale*, 443 U.S. 368, 378–79, 99 S.Ct. 2898, 2904–05, 61 L.Ed.2d 608 (1979) (suppression hearing), this can only be done on the basis of specific judicial findings that (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity; (2) there is a substantial probability that closure would prevent that prejudice; and (3) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. [*Press Enterprise Co. v. Superior Court of California* ] *Press Enterprise II*, 478 U.S. [1] at 14, 106 S.Ct. [2735] at 2743 [92

L.Ed.2d 1 (1986) ]. To insure stringent safeguarding of the constitutional rights at stake we have required district courts considering closure of proceedings to give interested parties prior notice and an opportunity to be heard before deciding the issue, and to support any decision to close with reasons and findings of record, including why no less drastic alternatives to closure are feasible.

*Id.* at 852–53 (citations omitted).

We can sympathize with the problems of a trial judge handling a number of trials resulting from an ongoing investigation of elected members of a State's legislative body. There is always a tension between First Amendment right to a free press and Sixth Amendment right to a trial by an impartial jury, and when public officials are brought to trial under a criminal indictment, such tension is greatly increased. The trial judge, in attempting to balance these rights, sealed the records in the Clerk of Court's office, but left open any and all hearings, including hearings of motions that had been sealed. The judge justified his action by finding that "[a] reasonable likelihood exists that prejudicial news prior to the trial will jeopardize the defendant's right to a fair trial." The district court applied this standard based on *Central South Carolina Chapter, Soc. of Professional Journalists v. Martin*, 431 F.Supp. 1182 (D.S.C.), *aff'd*, 556 F.2d 706 (4th Cir. 1977), and *In re Russell*, 726 F.2d 1007 (4th Cir.), *cert. denied, Russell v. Flannery*, 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). The use of the reasonable likelihood standard was error.

*In re Russell* involved an order prohibiting potential witnesses in a criminal case from discussing their proposed trial testimony with members of the news media, and the court used a "reasonable likelihood of prejudice" test of whether a defendant would be prejudiced. However, *Russell* did not involve the sealing of all court records, including documents that had already been filed and the information contained therein made public. In *Russell* the petitioners were the potential witnesses who wanted to discuss their proposed testimony with the media. This is not an appealing scenario

and did not require more than the "reasonable likelihood of prejudice" standard. Orders restricting parties, witnesses and attorneys from discussing a pending case with the press are not unusual. *See Martin*, 556 F.2d at 708.

In *In re Greensboro News Co.*, 727 F.2d 1320 (4th Cir.1984) the challenge was to the trial judge's in camera voir dire of potential jurors in a criminal prosecution so as to ensure frank and forthcoming responses from the potential jurors. We concluded that "[s]uch practice is not unusual, nor viewed with suspicion." *Id.* at 1323. We also stated that we were not convinced that the substantial probability of irreparable damage to the defendant's fair trial right was the proper test to be applied for closing voir dire.

Any confusion that may have resulted from our prior decisions has ended with *In re Charlotte Observer* in which we followed *Press–Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), to adopt the substantial probability standard in deciding questions of closure of pretrial proceedings. Under this standard, pretrial proceedings may be closed and/or documents and motions filed pre-trial may be sealed in order to protect a defendant's right to a fair trial only if the district judge makes

> specific judicial findings that (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity; (2) there is a substantial probability that closure would prevent that prejudice; and (3) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

*In re Charlotte Observer*, 882 F.2d at 853.

■ It was error for the district court to use the "reasonable likelihood" standard rather than the "substantial probability" standard in deciding to seal the court's records. On remand, the district court must consider all three prongs of the substantial probability test. In order to justify sealing the records, the court must find:

(1) a substantial probability that irreparable damage to defendant's fair trial right will result from failure to seal the record;

(2) a substantial probability that alternatives to sealing will not adequately protect his right to a fair trial; and

(3) a substantial probability that sealing the record will be effective in protecting against the perceived harm.

On the present record, we cannot adequately review the trial court's finding that there is no adequate alternative to sealing the public record until such time as it no longer poses a threat to the selection of an impartial jury. The district court found that the only alternative suggested by the media was that the court selectively edit public documents to excise potentially prejudicial and improper material. The court found that it did not have the time or the resources to accurately and fairly accomplish this task; however, we have no indication of the magnitude of the undertaking. There is no indication as to whether editing or redacting the various motions and the responses would involve only a few pages or many hundred pages. For this reason we have required specific reasons and findings on the record, *see In re Washington Post*, 807 F.2d at 391; *In re Charlotte Observer*, 882 F.2d at 853, because without such findings, *de novo* review is difficult. We certainly sympathize with the case load of the district court and the many demands upon its time, but without specific findings of fact we cannot adequately review closure orders.

■ There are probably many motions and responses thereto that contain no information prejudicial to a defendant, and we can not understand how the docket entry sheet could be prejudicial. However, under the terms of the orders entered in these cases, this information, harmless as it may be, has also been withheld from the public. Such overbreadth violates one of the cardinal rules that closure orders must be tailored as narrowly as possible. Overbreadth is also obvious from the fact that motions and documents filed in the Clerk's Office prior to the date of the gag order have been sealed, although their content and substance were made public at the time of filing.

In response to a question from the court during oral argument, counsel for the petitioners made the reasonable suggestion that when one of the attorneys prepared a pretrial document that might contain information prejudicial to a defendant, the opposing counsel could be contacted to review the document. If the attorneys could not agree, the document would be submitted to the trial court. If the court found, after applying the substantial probability standard, that such information would create pretrial prejudice, the document could be redacted by the court for the public, with the original being filed with the Clerk under seal. We are sure there are other methods that may be used to reach a practical solution to problems presented by the conflict between the rights of the defendants and those of the media.

We vacate the orders filed September 25, 26 and 28, 1990, in the Taylor case (No. 90–5908) and October 9, 1990, in the Fant, Blanding and Gordon cases (No. 90–5909), and we remand to the district court with directions to reconsider the matter applying the constitutional standards discussed above. Further, we direct the district court to support its decision with a clear statement of reasons, accompanied by specific findings and a discussion of possible alternatives.

VACATED AND REMANDED WITH INSTRUCTIONS.