**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

VIRGINIA DEPARTMENT OF STATE
POLICE,
                              *Appellant,*

v.

THE WASHINGTON POST; THE
VIRGINIAN PILOT; RICHMOND TIMES-
DISPATCH; ASSOCIATED PRESS;
VIRGINIA PRESS ASSOCIATION; MEDIA
GENERAL OPERATIONS, INCORPORATED,
                              *Appellees,*

EARL WASHINGTON, JR.,
                 *Plaintiff-Appellee,*                   No. 04-1375

and

KENNETH H. BURAKER; CHARLES
JONES; HARLAN LEE HART; GERALD
YANCEY; GARY L. CLOSE; DENNY M.
SLANE; TERRY SCHRUM; CURTIS REESE
WILMORE; LUTHER COX; DENNY A.
ZEETS; TOWN OF CULPEPER, VIRGINIA;
FAUQUIER COUNTY, VIRGINIA; MARY
L. JONES,
                              *Defendants.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CA-02-106-3)

Argued: June 4, 2004

Decided: October 1, 2004

Before WIDENER and SHEDD, Circuit Judges, and
David R. HANSEN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed in part and remanded in part by published opinion. Judge Shedd wrote the opinion, in which Judge Widener and Senior Judge Hansen joined.

---

## COUNSEL

**ARGUED:** James Owen Towey, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant. Peter J. Neufeld, COCHRAN NEUFELD & SCHECK, L.L.P., New York, New York; John G. Kester, WILLIAMS & CONNOLLY, Washington, D.C., for Appellees. **ON BRIEF:** Jerry W. Kilgore, Attorney General, Martin L. Kent, Assistant Attorney General, Richmond, Virginia, for Appellant. Eric M. Freedman, New York, New York; Robert T. Hall, HALL, SICKELS, ROSTANT, FREI & KATTENBURG, P.C., Reston, Virginia, for Earl Washington, Jr.; Conrad M. Shumadine, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for The Virginian-Pilot; Craig T. Merritt, CHRISTIAN & BARTON, L.L.P., Richmond, Virginia, for Media General Operations, Inc., t/a The Richmond Times-Dispatch, Associated Press, and Virginia Press Association; Dane H. Butswinkas, Kenneth J. Brown, WILLIAMS & CONNOLLY, L.L.P., Washington, D.C., for The Washington Post.

---

## OPINION

SHEDD, Circuit Judge:

Earl Washington, Jr., was convicted, sentenced to death, and eventually pardoned for the 1982 murder of Rebecca Lynn Williams. The underlying case from which this appeal comes to us is Washington's

civil rights lawsuit in which he challenges his arrest and conviction for the Williams murder, but the merits of that case are not now before us. Instead, we are presented with a challenge by the Virginia Department of State Police ("VDSP") — which is not a party in Washington's civil case — to the district court's decision to unseal certain documents that VDSP had produced pursuant to a subpoena *duces tecum* served by Washington and other documents which contain information from the VDSP documents. The documents were filed in the district court under seal, and they pertain to VDSP's criminal investigation into the Williams murder. For the reasons set forth below, we affirm the district court's decision to unseal the documents in part, and we remand in part for further proceedings.

I

On June 4, 1982, Williams was raped and murdered in her Culpeper, Virginia, apartment. In May 1983, while in custody for an unrelated crime, Washington confessed to raping and killing Williams. Washington was tried and convicted for the capital murder of Williams in January 1984, and he was thereafter sentenced to death. The Supreme Court of Virginia affirmed Washington's conviction and sentence, *see Washington v. Virginia*, 323 S.E.2d 577 (Va. 1984), and his attempts at post-conviction relief were unsuccessful, *see Washington v. Angelone*, 12 Fed. Appx. 112 (4th Cir. 2001); *Washington v. Murray*, 4 F.3d 1285 (4th Cir. 1993); *Washington v. Murray*, 952 F.2d 1472 (4th Cir. 1991).

In 1994, then-Governor L. Douglas Wilder commuted Washington's sentence to life in prison, and in 2000, then-Governor James S. Gilmore, III, pardoned Washington. Governor Gilmore based the pardon on his determination that a jury, if presented with newly available DNA test results, would have reached a different conclusion regarding Washington's guilt. Governor Gilmore explained his rationale:

> According to the results of the new DNA tests, Washington is excluded from semen taken from Mrs. Williams' body and his DNA could not be located elsewhere in the apartment.
>
> The DNA results further revealed the semen of another person on a blue blanket taken from the scene of the crime. The

> DNA from semen on the blue blanket matched the DNA of a convicted rapist. However, the DNA on the blue blanket did not match the DNA of the sole sample of semen taken from Mrs. Williams' body. As a result, the Division of Forensic Science could not confirm the DNA found on the blue blanket was Rebecca Williams' rapist.

(J.A. 264-65). In conjunction with the pardon, Governor Gilmore ordered VDSP to conduct a new investigation into the Williams case.

Washington filed the underlying civil action in 2002. During pre-trial proceedings, Washington served a third-party subpoena *duces tecum* on VDSP commanding production of all documents and other materials concerning him from June 1982 to the date of the subpoena "including, without limitation, all such material related to the murder of Rebecca Lynn William [sic] and the investigation ordered thereon by Governor James S. Gilmore, III." (J.A. 74). VDSP responded by releasing all applicable documents except those it asserted were part of the ongoing criminal investigation file. VDSP objected to producing those documents, and Washington moved to compel their production. VDSP then moved to quash or modify the subpoena.

The district court granted Washington's motion to compel, denied VDSP's motion to quash, and ordered VDSP to produce the investigation file. The district court recognized the "potential sensitivity" of the information in the investigation file, but it concluded that Washington's "need for this information and the public interest outweigh the need for total secrecy." (J.A. 167). The district court, however, conditioned its ruling on the entry of a protective order. Subsequently, the district court entered a protective order that required VDSP to produce the investigation file only to the parties, counsel of record and their employees, and properly designated experts. The protective order prohibited further dissemination of the investigation file. Washington and VDSP subsequently consented to the entry of a supplemental protective order to govern documents that were created after the original subpoena had been served.

Many of the documents produced by VDSP pursuant to the protective orders were later attached to or addressed in pleadings and other documents filed with the district court, and some were also discussed

during district court hearings. Although the protective orders did not address the issue of sealing these documents, they were in fact filed under seal.

As the case progressed, Washington moved to lift the protective orders. Washington argued that the VDSP investigation was no longer ongoing and, therefore, the justification for maintaining the confidentiality of the VDSP discovery documents no longer existed. Washington also argued that under the First Amendment and the common law the public has a right of access to the VDSP documents. Several media organizations ("Media Appellees") subsequently moved to intervene and to unseal all documents that had been filed under seal.

On February 20, 2004, the district court heard oral arguments on the motions. At the conclusion of the hearing, the district court ordered VDSP to file a statement setting forth its reasons for wanting to maintain under seal any sealed pleadings, sealed documents attached to pleadings, or sealed transcripts. VDSP thereafter filed its statement ("the statement of compelling reasons"). As a result of this process, VDSP narrowed the list of documents it desired to keep under seal, and it attached those documents (under seal) to the statement of compelling reasons as Exhibits A through T. While VDSP asserted that some documents should remain under seal in their entirety, it also proposed redactions for other documents. Generally speaking, VDSP's stated reasons for keeping these documents sealed are that they concern a "certain suspect" and forensic testing relating to that suspect.

The district court thereafter issued three orders addressing the issue of the sealed documents. In the first order (dated March 5, 2004), the district court ruled "[f]or the time being" that the documents designated for redaction by VDSP in the statement of compelling reasons would be redacted and that the documents that VDSP wished to keep under seal would remain under seal. The district court unsealed all other sealed documents that were filed before February 20, 2004.

On March 10, newspaper articles about the Williams murder investigation were published in various newspapers, including the Washington Post and the Richmond Times-Dispatch. These articles, which were attributed to the Associated Press, reported that the unsealed

court documents identify Kenneth Maurice Tinsley, a convicted rapist, as a suspect in the murder because Tinsley's DNA matches samples found at the crime scene. Many additional news reports have likewise identified Tinsley as a suspect because of the DNA samples.

In the second order (dated March 18, 2004), the district court ordered that, with one exception (Exhibit D), all documents filed under seal before February 20, 2004, be unsealed.[1] The district court explained:

> The documents that VDSP claims should remain under seal predominantly deal with Kenneth Maurice Tinsley ("Tinsley"), a convicted rapist who is a suspect in the murder of Rebecca Williams. The Court is sympathetic to the desire of the state police to keep aspects of a murder investigation off the public record. Because VDSP did not attempt to seal all portions of the record that disclose Tinsley as a suspect, however, Tinsley's identity is already a matter of public record. Given that Tinsley's identity has already been disclosed, and his status as a suspect in the Williams murder has already been extensively reported in the media, the Court finds that VDSP's stated interest in keeping Tinsley's identity confidential is not compelling.
>
> VDSP also attempts to seal a recent interview [Exhibit D] with a suspect in the Tinsley case. . . . The subject of this interview discloses facts surrounding the murder of Rebecca Williams that have not been made public. The release of this document could undermine the Williams murder investigation, and the Court finds that a compelling governmental interest exists in protecting the integrity of an ongoing police investigation. Accordingly, this interview shall remain under seal.

(J.A. 425-26). Neither Washington nor the Media Appellees have

---

[1] The district court limited the order to cover only documents that had been filed, and it expressly excluded "discovery material that is not part of the record." (J.A. 426).

challenged the district court's decision to keep Exhibit D under seal, and that issue is not before us.

VDSP immediately moved for a stay and reconsideration of the March 18 order. At a hearing on these motions, VDSP consented to the unsealing of five of the documents it had attached to the statement of compelling reasons (Exhibits A, B, J, K, and L). Thereafter, the district court entered the third order (dated March 23, 2004), in which it denied the motion for reconsideration.[2] The district court explained:

> Under the First Amendment "the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (citing *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984)); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)). VDSP argues that because it objects to the release of documents that "reveal information concerning suspects, recent witnesses, and details about evidence" it has met its burden to produce a compelling governmental interest. VDSP also argues that the Rebecca Williams murder investigation would be hampered by releasing certain specified documents, that witnesses would be put at risk, and that future investigative techniques would be undermined. VDSP does not explain the basis of these concerns. General concerns stated in a conclusory fashion are not sufficient to constitute a compelling government interest, and do not grant the Court a sufficient basis [to] deny public access to documents filed in this action.

(J.A. 470). Although it denied VDSP's motion for reconsideration,

---

[2]VDSP did not cite a procedural rule upon which its motion was based, and the district court treated it as a Rule 60(b)(6) (Fed. R. Civ. P.) motion. Because VDSP filed the motion within 10 days after the order was entered, the district court should have considered it under Rule 59(e). *See Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978).

the district court granted VDSP's motion for a stay in order to allow VDSP time to file an appeal.[3]

On March 25, VDSP filed in the district court a "Notice of Petition for Writ of Mandamus and/or Prohibition and Interlocutory Appeal and Application for Emergency Stay" from the March 23 order, and it also filed an application for a stay of the March 23 order in this Court. In its application to this Court, VDSP stated that notwithstanding its district court filing, it is not pursuing mandamus or prohibition relief.[4] On March 26, we stayed the March 23 order, and we conducted oral argument on an expedited basis on June 4.

On June 23, the district court denied Washington's motion to lift the protective orders. The district court found that "there is still an ongoing investigation into the Williams murder" and that the protective orders do not offend the First Amendment. *Order*, No. 3:02-CV-00106 (June 23, 2004).

The district court has entered two partial summary judgment orders which have dismissed most of Washington's claims. *See Washington v. Buraker*, 322 F. Supp. 2d 702 (W.D. Va. 2004) ("*Buraker II*"); *Washington v. Buraker*, 322 F. Supp. 2d 692 (W.D. Va. 2004). On August 9, the district court stayed its proceedings in order to allow one of the remaining defendants (Curtis Wilmore) to pursue an interlocutory appeal of an adverse summary judgment ruling on his claim of qualified immunity. The merits of that appeal are not now before us.

---

[3]It appears that the district court did not actually unseal any of the disputed documents between March 18 and March 23. However, it is not clear if the parties provided the documents to anyone during that time.

[4]VDSP has specifically appealed only the March 23 order; however, we believe that its intent to appeal the March 18 order is clear, and we therefore will review both orders. *See Brown v. French*, 147 F.3d 307, 311 (4th Cir. 1998). Moreover, although a mandamus petition is the "preferred vehicle for review" of orders sealing or unsealing records, an order unsealing district court documents is an appealable collateral order under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). *See Under Seal v. Under Seal*, 326 F.3d 479, 485 & n.5 (4th Cir. 2003).

II

This appeal presents the seeming tension between several legitimate interests. On one hand, the operation of the court system is a matter of "utmost public concern," *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978), and "[s]ociety has an understandable interest . . . in law enforcement systems and how well they work." *In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991). These interests are obviously implicated here because of the circumstances surrounding Washington's death sentence and subsequent pardon. On the other hand, law enforcement agencies must be able to investigate crime without the details of the investigation being released to the public in a manner that compromises the investigation.

VDSP frames the issue before us broadly as involving "the integrity of information contained in all on-going criminal investigation files," *Brief of the Appellant*, p. 19, and contends that the district court's decision to unseal the documents will have a dramatic effect beyond this case. We believe, however, that the issue is actually quite narrow and that its resolution is dictated by well-established precedent and the unique circumstances of this case.

A.

The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment. *Stone v. University of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988) ("*Stone I*"). "Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case." *Columbus-America Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000).

The distinction between the rights of access afforded by the common law and the First Amendment is "significant," *In re Baltimore Sun Co.*, 886 F.2d 60, 64 (4th Cir. 1989), because the common law "does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). Conse-

quently, "the common law does not provide as much access to the press and public as does the First Amendment." *In re State-Record Co.*, 917 F.2d 124, 127 (4th Cir. 1990).[5]

The common law presumes a right of the public to inspect and copy "all 'judicial records and documents.'" *Stone I*, 855 F.2d at 180 (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978)). "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access," and "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253. Some of the factors to be weighed in the common law balancing test "include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Publ. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Ultimately, under the common law the decision whether to grant or restrict access to judicial records or documents is a matter of a district court's "supervisory power," and it is one "best left to the sound discretion of the [district] court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 598-99. We therefore review a district court's decision concerning common law access for abuse of discretion. *Rushford*, 846 F.2d at 253.

In contrast to the common law, "the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone I*, 855 F.2d at 180. When the First Amendment provides a right of access, a district court may restrict access "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position. *See Press-Enterprise Co. v. Superior Court*, 478 U.S.

---

[5]The rights of access of the media "are co-extensive with and do not exceed those rights of members of the public in general." *In re Greensboro News Co.*, 727 F.2d 1320, 1322 (4th Cir. 1984).

1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion"). We review a district court's decision concerning access under the First Amendment de novo. *In re State-Record*, 917 F.2d at 127.

### B.

Regardless of whether the right of access arises from the First Amendment or the common law, it "may be abrogated only in unusual circumstances." *Stone I*, 855 F.2d at 182. When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. *Rushford*, 846 F.2d at 253. As to the substance, the district court first "must determine the source of the right of access with respect to each document," because "[o]nly then can it accurately weigh the competing interests at stake." *Stone I*, 855 F.2d at 181.

A district court must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. *Id.* Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review. *Id.* at 182. This determination "is one properly made in the first instance from the superior vantage point of the district court." *Id.*

### C.

The right of access in any given case may vary depending on the nature of the case and the specific item under review. *Id.* at 180. Here, we are dealing with a civil case, and with material produced by VDSP during pretrial discovery that was later filed (or addressed in filings) in the district court. Although the majority of cases involving access to court records appear to be criminal cases, we have previously addressed the issue in the context of civil cases.

For example, in *Rushford* we considered the propriety of a district court's order sealing documents that were attached to a successful summary judgment motion. Although the documents had been the subject of a pretrial discovery protective order, we observed that once the documents were made part of a dispositive motion, they lost their status as being "raw fruits of discovery," and that discovery, "which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." 846 F.2d at 252 (internal quotation marks omitted). After noting that summary judgment "serves as a substitute for a trial" and that we had held in a prior case that the First Amendment standard should apply to documents filed in connection with plea and sentencing hearings in criminal cases, we held that "the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case." *Id.* at 252, 253.

Although we recognized that "there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion," we stated that the district court must make that determination "at the time it grants a summary judgment motion and not merely allow continued effect to a pretrial discovery protective order." *Id.* at 253. We noted that "[t]he reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents," and we remanded the case to the district court in order for it to determine under the appropriate substantive and procedural standards whether the documents should remain sealed. *Id.* at 254.

We faced a similar set of circumstances in *Stone I*. In that case, the district court sealed the entire record (except for a few pleadings). Thereafter, the district court granted the defendants' summary judgment motion, and it denied a request by a media intervenor to unseal the record. As in *Rushford*, because the district court did not properly analyze the request to seal the documents, we remanded the case for further consideration. *Stone I*, 855 F.2d at 180-83.

On remand, the district court lifted the seal on all but three documents. Two of the documents had been attached as exhibits to the defendants' summary judgment motion, and one had been filed by the

plaintiff in opposition to the summary judgment motion. The district court concluded that a compelling government interest outweighed the intervenor's First Amendment right of access to these documents. On appeal, we held that the district court erred in determining that the government's asserted reason was compelling, and we therefore ordered the documents to be unsealed. *Stone v. University of Md. Med. Sys. Corp.*, 948 F.2d 128, 131 (4th Cir. 1991).[6]

## III

Fourteen documents that were sealed in the district court are at issue in this appeal. In the statement of compelling reasons, VDSP states that Washington filed one of these documents (Exhibit C) in connection with a discovery matter; eight (Exhibits E, F, G, H, I, M, N, and O) in connection with his response to summary judgment motions; and four (Exhibits P, Q, R, and S) in connection with his motion to lift the protective orders.[7] The final document (Exhibit T) is a portion of the transcript of a hearing that was held before a magistrate judge on November 24, 2003. The remainder of VDSP's crimi-

---

[6]We recently affirmed a district court's denial of a request by a civil litigant under *Rushford* to unseal discovery documents that had been produced pursuant to a protective order and then filed in connection with a summary judgment motion. *See Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004). Although Washington's argument for public access in the instant appeal is similar to the one we rejected in *Pittston*, the cases are distinguishable because here (unlike *Pittston*) we have the intervention by the Media Appellees.

[7]Exhibit C is paragraphs 13-22 and the last sentence of paragraph 23 of the Declaration of Peter Neufeld, which is attached to Washington's "Brief in Opposition to Nonparty Virginia State Police's Motion to Quash Subpoena and in Furtherance of his Motion to Compel the Release of Evidence to D. Edward T. Blake." Exhibit E is a portion of page 1, all of pages 36-37, and the first two lines of page 38 of Washington's "Brief in Opposition to Motions for Summary Judgment Based on Qualified Immunity Filed by Defendants Reese Wilmore and Denny Slane," and Exhibits F, G, H, I, M, N, and O are VDSP documents that are attached to this brief. Exhibit P is a portion of page 4 of Washington's "Brief in Reply to the VSP's Opposition to Lift Protective Orders," and Exhibits Q, R, and S are VDSP documents that are attached to this brief.

nal investigation file (as it existed on February 20, 2004) has been released to the public.

In unsealing these documents, the district court focused its analysis exclusively on the First Amendment, and it implicitly held that the public has a First Amendment right of access to all of the documents. The district court then expressly held that VDSP had failed to establish a compelling governmental interest to restrict that access.

Concerning this latter finding, the district court recognized that "a compelling governmental interest exists in protecting the integrity of an ongoing police investigation," and it applied this principle in refusing to unseal Exhibit D. (J.A. 426). More specifically, the district court found that the information contained in Exhibit D (which is not before us) involves facts surrounding the Williams murder that have not been made public and that the release of the information could undermine the investigation. In contrast, the district court found that the other material VDSP seeks to keep under seal primarily deals with Tinsley, whose "status as a suspect in the Williams murder has already been extensively reported in the media" because of VDSP's failure to attempt to seal all portions of the record that disclose him as a suspect. (J.A. 425-26). The district court therefore concluded that VDSP's stated interest in keeping Tinsley's identity confidential is not compelling. (J.A. 426). The district court further concluded that VDSP failed to provide any other sufficient compelling reason to justify the documents remaining under seal. (J.A. 470).

In this posture, we review the district court's decision to unseal the documents de novo, and we must first determine whether the district court correctly accorded First Amendment status to each of the documents. If we find that the district court is correct in this regard, we must then determine whether it also correctly rejected VDSP's asserted compelling governmental reason to keep each document sealed. Conversely, if we find that the district court erred in according First Amendment status to any of the documents, we must then turn our attention to the issue of whether the public has a common law right of access to that document and whether VDSP has presented a sufficient reason to restrict that access.[8]

---

[8]Although the issue presented to us is whether the district court erred in unsealing the documents, we note that the district court actually erred

A.

As we have noted, Washington filed eight of the documents (Exhibits E, F, G, H, I, M, N, and O) in connection with his opposition to summary judgment motions. Specifically, Washington filed these documents in opposition to the summary judgment motions of defendants Curtis Wilmore and Denny Slane. Before the motions were decided, Washington dismissed all of his claims against Slane. *See Buraker II*, 322 F. Supp. 2d at 716. The district court thereafter granted partial summary judgment in favor of Wilmore. From the record before us, we cannot tell whether the district court specifically considered these eight documents in making its determination, but we also have no indication that it declined to consider them.

The district court did not elaborate on its basis for according First Amendment status to these eight documents. Nonetheless, we conclude that the district court's determination that the public has a First Amendment right of access to them is correct. We believe this conclusion is compelled by our decision in *Rushford* in which (as noted) we held that "the more rigorous First Amendment standard should . . . apply to documents filed in connection with a summary judgment motion in a civil case." 846 F.2d at 253. Because the public has a right of access under the First Amendment to these documents, the district court correctly required VDSP to proffer a compelling governmental reason to keep them sealed. *Id.* We therefore must turn to the district court's conclusion that VDSP's stated reasons concerning these documents are not compelling.

We note initially our complete agreement with the general principle that a compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation. However, not every release of information contained in an ongoing criminal investi-

---

in allowing the documents to be sealed in the first instance. Regardless of whether the district court properly entered the protective orders, it clearly did not comply with our procedures in allowing the documents to be sealed. However, because the district court eventually unsealed the contested documents, its failure in this regard is not before us.

gation file will necessarily affect the integrity of the investigation.[9] Therefore, it is not enough simply to assert this general principle without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information. Whether this general interest is applicable in a given case will depend on the specific facts and circumstances presented in support of the effort to restrict public access. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607-08 (1982) ("But as compelling as that interest is, it does not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest" (emphasis in original)). Although we need not attempt to catalogue the various reasons which may be considered in deciding whether an asserted interest is compelling, we note that one consideration is (as the district court recognized concerning Exhibit D) whether the granting of access to the contents of an ongoing police investigation file will disclose facts that are otherwise unknown to the public.[10]

VDSP's stated interest concerning these eight documents is that each document contains information about (1) the identity of "a certain suspect or suspects" and (2) evidence (including DNA evidence) involving the suspect or suspects. We have carefully examined these documents, and we have likewise given careful consideration to VDSP's arguments concerning them. We believe that the district court correctly determined that VDSP has failed to present a compelling governmental interest that is sufficient to keep these documents sealed.

The bulk of the information contained in these documents relates to Tinsley and the DNA testing that identified his semen on a blanket found at the murder scene. As the district court found, this information has already become a matter of public knowledge because VDSP

---

[9]This point is illustrated to some extent by the facts of this case: VDSP has in fact consented to, or acquiesced in, the release of almost its entire file concerning the Williams murder investigation, which VDSP adamantly maintains is ongoing.

[10]We express no opinion on the propriety of the district court's decision to keep Exhibit D under seal because (as we have noted) that issue is not before us.

allowed (or acquiesced in) the public release of other documents in which it is contained. We note, as one example, that the Joint Appendix (page 274) contains an unsealed VDSP memorandum dated September 23, 2003, which specifically identifies Tinsley and describes the results of DNA testing. Additionally, Exhibits J, K, and L — which VDSP consented to be released — specifically discuss Tinsley and contain police photographs of him. As we have recognized in a slightly different context, "[o]nce announced to the world, the information lost its secret characteristic." *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990) (vacating injunction prohibiting reporters from disclosing information revealed in open courtroom).

We therefore affirm the district court's orders to the extent they unseal Exhibits E, F, G, H, I, M, N, and O. Because Exhibits I and R are actually the same document, we find that VDSP's challenge to the unsealing of Exhibit R is now moot.

B.

We next consider Exhibit T, which is a portion of a November 24, 2003, hearing transcript. This hearing appears to have concerned pretrial discovery matters. Although the district court accorded Exhibit T First Amendment status, we have never held that the public has a First Amendment right of access to a pretrial hearing on a non-dispositive civil motion or to the transcript of such a hearing. However, we have found a First Amendment right of access to certain pretrial criminal hearings. *See In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) ("we hold that the First Amendment right of access applies to documents filed in connection with plea hearings . . . in criminal cases, as well as to the hearings themselves"). We also recognize that although the public hearing requirement of criminal proceedings "is not inflexibly applied in all civil proceedings," *Satterfield v. Edenton-Chowan Bd. of Educ.*, 530 F.2d 567, 573 (4th Cir. 1975), proceedings in civil cases are traditionally open, *see In re Grand Jury Subpoena*, 836 F.2d 1468, 1475 n.11 (4th Cir. 1988) ("Sealing the discovery process in civil proceedings . . . sacrifices the traditional interest of the public in obtaining access to civil proceedings"), and "in some civil cases the public interest in access . . . may be as strong as, or stronger than, in most criminal cases," *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979).

As we noted, in the statement of compelling reasons VDSP set forth its purported compelling reasons for keeping each document under seal. However, as to Exhibit T, VDSP offered no specific reason at all, much less a compelling reason. Likewise, it has offered no specific reason in its appellate briefs. From our review of this document, we do not see any obvious reason how its release would affect the integrity of the Williams investigation.

On this record, we need not decide whether Exhibit T should be accorded First Amendment or common law status. We believe that VDSP's failure to offer any reason at all is fatal to its attempt to maintain this document under seal under either standard. We therefore affirm, albeit on slightly different grounds, the district court's orders to the extent they unseal Exhibit T.

C.

We are left to consider four documents: Exhibits C, P, Q, and S. Washington attached Exhibit C to a brief concerning pretrial discovery matters. Exhibit P is a portion of a brief Washington filed in support of his motion to lift the protective orders, and Exhibits Q and S are attached to that brief.

We have decided to remand this case to the district court for further consideration of whether these four documents should be sealed. As with the other documents, the district court simply assumed, without explanation, that the public has a First Amendment right of access to these documents. We are not at all convinced that this is a correct assumption, and we are certainly not persuaded one way or the other by the parties' arguments on appeal. Moreover, we have no basis to ascertain to what extent, if any, the district court considered these documents in the proceedings below. We therefore believe that further consideration and explanation by the district court is warranted.

On remand, the district court should reconsider whether these documents should be accorded First Amendment status and specifically state the reasons for whatever decision it reaches. Because of the posture of this case, regardless of its conclusion concerning the First Amendment, the district court should also consider whether there is a common law right of access to these documents and whether VDSP

has presented sufficient reasons to restrict that access. As we explained in *Stone I*, these are determinations that are "properly made in the first instance from the superior vantage point of the district court" and are necessary for meaningful appellate review. 855 F.2d at 182.[11]

## IV

Based on the foregoing, we affirm the district court's orders unsealing Exhibits E, F, G, H, I, M, N, O, R, and T, and we remand this case to the district court for further consideration of whether Exhibits C, P, Q, and S should be unsealed.

*AFFIRMED IN PART*
*AND REMANDED IN PART*

---

[11]Although VDSP contends that there is no First Amendment right of access to any of the 14 documents at issue, it did not take that position below. *See, e.g.*, J.A. 366 (VDSP counsel stating that "I do agree that First Amendment scrutiny applies to documents that are filed as judicial records" and "I agree . . . that the only documents that are subject to First Amendment scrutiny are those that have been attached to pleadings"); J.A. 399-401 (VDSP's argument concerning the First Amendment in the statement of compelling reasons).