**LEVEL 3 COMMUNICATIONS, LLC, Plaintiff,**

v.

**LIMELIGHT NETWORKS, INC., Defendant.**

**Civil Action No. 2:07cv589.**

United States District Court, E.D. Virginia, Norfolk Division.

April 30, 2009.

Charles B. Molster, III, Washington, DC, Jason Charkow, New York City, Kurt A. Mathas, Chicago, IL, Ryan R. Sparacino, Washington, DC, Scott C. Walson, David E. Dahlquist, Chicago, IL, Michael R. Katchmark, Norfolk, VA, Peggy .M. Balesteri, Chicago, IL, Peter C. McCabe, III, Chicago, IL, for Plaintiff.

Rick Richmond, Alexander F. MacKinnon, Los Angeles, CA, Charanijit Brahma, Daniel F. Attridge, Washington, DC, Guy Ruttenberg, Los Angeles, CA, Joseph J. Jacobi, Chicago, IL, Karen M. Robinson, Washington, DC, Kristan B. Burch, Norfolk, VA, Melody Drummond–Hansen, Washington, DC, Nick G. Saros, Robert G. Krupka, Los Angeles, CA, Stephen E. Noona, Norfolk, VA, for Defendant.

## OPINION AND ORDER

MARK S. DAVIS, District Judge.

This matter is currently before the Court on non-party Savvis, Inc.'s ("Savvis") motion to intervene for the limited purpose of moving to seal certain trial exhibits (Docket No. 479). Such exhibits contained documents produced by Savvis and fellow non-party GCA Savvian Advisors, LLC ("Savvian") in response to document requests issued by plaintiff Level 3 Communications, LLC ("Level 3") in the course of discovery in this case. The motion was fully briefed and is now ripe for decision. The Court considers the merits below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This motion arises in the context of a patent infringement suit that was tried before a jury in January 2009. In the interest of judicial economy, the Court will refrain from recounting the extensive (and, for current purposes, largely irrelevant) factual and procedural history preceding the Final Pretrial Conference before United States Magistrate Judge F. Bradford

Stillman on December 30, 2008.[1] The Final Pretrial Order (Docket No. 385) was entered on the following day. On Sunday, January 4, 2009—two days before the jury trial in this matter commenced—counsel for Level 3 notified counsel for Savvis by email that Level 3 intended to use certain Savvis and/or Savvian documents at trial. *See* Savvis's Memorandum in Support of Motion to Intervene and to Seal Certain Trial Exhibits Produced by Non–Party (Docket No. 479; "Mot. Mem.") Ex. A. Counsel for Level 3 listed certain specific numerical bates stamp ranges in that message—notably including the bates stamp range that would later constitute PX–0020, one of the trial exhibits at issue in the instant motion—and indicated that they "may use additional Savvian and/or Savvis documents as necessary during trial." *Id.*

Counsel for Savvis responded to this notice by reply email in the early evening of Tuesday, January 6, 2009 (*i.e.*, after the first day of trial had already ended), requesting that if "Level 3 moves into evidence any Savvis or Savvian documents that are designated under the Protective Order, we ask that you advise the Court that Savvis and Savvian request that those documents remain under seal." *Id.* The response continued by explaining that Savvis "would determine at the end of the trial if we want to preserve the sealing of such documents that get admitted, and if necessary we would file a motion asking the Court to do that." *Id.* Counsel for Savvis also noted parenthetically: "We're not asking to close the proceedings, just that the documents don't get made part of a public court file."[2] *Id.* The response concluded

---

1. The Court previously discussed this case's factual and procedural background in its Opinion and Order denying defendant Limelight Networks, Inc.'s ("Limelight") motion for summary judgment. *See Level 3 Commc'ns, LLC v. Limelight Networks, Inc.,*

Civil Action No. 2:07cv589, 2008 WL 5783991, at *1 (E.D.Va. Dec. 29, 2008).

2. No party or non-party requested that the hearing on Limelight's motion for summary judgment or any part of the jury trial in this matter be closed to the public.

"[t]o that end, we would ask that when the trial is over, you let us know what Savvis or Savvian documents (if any) have been admitted by Level 3" and indicated that counsel for Savvis would "make a similar request of Limelight." *Id.*

On the following morning, January 7, 2009, counsel for Level 3 acknowledged receipt of Savvis's request by reply email, but indicated that "neither party in the case is seeking to put any of the trial exhibits or testimony under seal, and we are unable to comply with your request to do so for the Savvis/ Savvian documents and testimony." Level 3's Opposition to Savvis' Motion to Intervene and to Seal Certain Trial Exhibits Produced by Non–Party (Docket No. 484; "Opp'n") at 2 n. 1, Ex. C. Level 3 did, however, indicate its willingness to "let [counsel for Savvis] know at the end of the case which [Savvis and/or Savvian documents] were admitted," *id.* Ex. C, and, in fact, did so by email on Wednesday, January 14, 2009, in response to a further request by counsel for Savvis. *Id.* Ex. D.

On January 23, 2009, the jury returned its verdict, finding no infringement by defendant, but also declining to find the asserted claims of the patents-in-suit (U.S. Patent Numbers 6,654,807 and 6,473,405) invalid. On February 12, 2009, Savvis filed the instant motion (Docket No. 479). Savvis represented to the Court that Limelight had stated it would not oppose the motion, but that Level 3 had stated that it may oppose it. *See* Mot. Mem. at 1. On February 18, 2009, Level 3 did, in fact, file an opposition brief, attaching as exhibits the very documents that the instant motion sought to seal (Docket No. 484). The next day, Savvis filed an emergency

motion to intervene temporarily to seal the exhibits to Level 3's opposition brief (Docket No. 486). The Court held an on-the-record telephonic hearing with counsel for the parties and Savvis on the emergency motion on February 20, 2009, and, without objection from the parties, entered an Order that same day directing the Clerk to seal temporarily the exhibits at issue in the emergency motion (Docket No. 488).[3] Savvis filed its rebuttal brief on the instant motion (Docket No. 489) on February 26, 2009.

## II. ANALYSIS

### A. Governing Procedure

■ "In patent-related cases filed in the Eastern District of Virginia, Federal Circuit law governs substantive issues, and the law of the Fourth Circuit applies to procedural matters that are not unique to patent law." *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.,* 301 F.Supp.2d 545, 549 (E.D.Va.2004) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994)). Accordingly, this Court will look to the law of the United States Court of Appeals for the Fourth Circuit in analyzing the instant motion to seal, which clearly is procedural and does not implicate any issues unique to patent law.

The Fourth Circuit has explained in detail the procedure that is to govern a district court's review of motions, such as the instant one, requesting that a court seal materials contained in its case files:

> When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As

---

3. The Court notes that this action is clearly authorized by applicable precedent. *See, e.g., In re Knight Publ'g Co.,* 743 F.2d 231, 235 n. 1 (4th Cir.1984) ("The court may temporarily seal the documents while the motion to seal is under consideration so that the issue is not mooted by the immediate availability of the documents.").

to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake. A district court must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing.

*Va. Dep't of State Police v. Wash. Post,* 386 F.3d 567, 576 (4th Cir.2004) (internal citations and quotations omitted). This also finds succinct expression in Civil Rule 5(H) of this Court's Local Rules, which provides that "[t]rial exhibits, including documents previously filed under seal, and trial transcripts will not be filed under seal except upon a showing of necessity demonstrated to the trial judge." E.D. Va. Loc. Civ. R. 5(H).

## B. The Applicable Law Governing Rights of Public Access to Judicial Records

Pursuant to the procedure established by the Fourth Circuit, the Court must first determine the source of the right of access with respect to the documents at issue. *Wash. Post,* 386 F.3d at 576. Therefore, before turning to the context of the instant motion, the Court will examine the legal landscape governing the rights of public access to judicial records, focusing, of course, on civil cases.

There is a highly-developed body of case law governing the handling of discovery documents and other materials filed with courts under seal in civil cases. For current purposes, this case law can be divided analytically into two categories. One body of case law relates to the protected status of documents produced in pre-trial discovery pursuant to a stipulated, court-approved protective order under Rule 26(c) of the Federal Rules of Civil Procedure. The second body of case law governs the public availability of materials that have been submitted to courts in connection with civil pleadings or motions (dispositive or otherwise) or entered by courts into evidence in the course of hearings or trial, whatever the materials' origins or pre-trial confidentiality status might previously have been.

The documents currently at issue were initially produced by a non-party in pre-trial civil discovery pursuant to a protective order, and the Court will therefore briefly discuss the pre-trial status of the documents below. However, it is clearly the latter body of case law to which the Court must turn in assessing the instant motion, because the documents currently at issue were also subsequently offered and entered into evidence, without prior or contemporaneous objections by any party or non-party, at the jury trial in this matter. Within this latter body of case law, there is a further analytical division, because, in our legal system, the "right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Wash. Post,* 386 F.3d at 575. The Court will discuss each such source in turn.

### 1. The Common Law Right of Public Access to Judicial Records

As the United States Supreme Court has explained, although "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents," that right "is not absolute. Every

court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Where the common law right of access is found to apply, a court's "decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599, 98 S.Ct. 1306. In some cases, "the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal.'" *Id.* at 598, 98 S.Ct. 1306 (citing *In re Caswell*, 18 R.I. 835, 836, 29 A. 259 (1893)). In other cases, "courts have refused to permit their files to serve . . . as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306 (citing *Schmedding v. May*, 85 Mich. 1, 48 N.W. 201, 202 (1891); *Flexmir, Inc. v. Herman*, 40 A.2d 799, 800 (N.J.Ch.1945)). In addition to such private interests that may outweigh the common law presumption of access, public interests may be weighed in the balance. *See, e.g., Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.1995) (applying the common law balancing test to weigh such factors as "public interest in understanding the judicial process").

■ In practical terms, although the common law presumes a right of public access to all judicial records and documents—*see, e.g., Wash. Post*, 386 F.3d at 575—that presumption "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988). Accordingly, in evaluating claims or objections involving the common law right of access, courts must weigh the competing public and private interests to determine if "[t]he party seeking to overcome the presumption" of access has borne its "burden of showing some significant interest that outweighs the presumption." *Id.*

### 2. The First Amendment Right of Public Access to Judicial Records

In addition to the common law right of access discussed above, courts have also found the First Amendment to the United States Constitution to presume a right of the public to inspect and copy judicial records and documents. *See Nixon*, 435 U.S. at 597, 98 S.Ct. 1306; *Wash. Post*, 386 F.3d at 575; *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). The First Amendment's guarantee of that right is much stronger than the guarantee provided by the common law. *Wash. Post*, 386 F.3d at 575; *see also Press–Enter. Co. v. Super. Ct. of Cal. for the County of Riverside*, 478 U.S. 1, 15, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); *Stone*, 855 F.2d at 180.

#### a. The Origin of the First Amendment Right

■ The precise origin of the right of public access to court proceedings (and, by extension, records of and documents relating to such proceedings) within the language of the First Amendment appears to lie in the clauses guaranteeing the freedoms of speech and of the press, which provide that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I. In "hold[ing] that the right to attend criminal trials is implicit in the guarantees of the First Amendment," Chief Justice Burger explained this derivation in his plurality opinion in *Richmond Newspapers, Inc. v. Virginia*:

The Bill of Rights was enacted against the backdrop of the long history of trials being presumptively open. Public access to trials was then regarded as an important aspect of the process itself; the conduct of trials "before as many of the people as chuse to attend" was regarded as one of "the inestimable advantages of a free English constitution of government." 1 Journals [of the Continental Congress, 1774–1789, at] 106, 107 [ (1904) ]. In guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those explicit guarantees. "[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978). Free speech carries with it some freedom to listen. "In a variety of contexts this Court has referred to a First Amendment right to 'receive information and ideas.'" *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972). What this means in the context of trials is that the First Amendment guarantees of speech and press, standing alone, prohibit government from summarily closing courtroom doors which had long been open to the public at the time that Amendment was adopted. "For the First Amendment does not speak equivocally.... It must be taken as a command of the broadest scope that explicit language, read in the context of a liberty-loving society, will allow." *Bridges v. California*, 314 U.S. 252, 263, 62 S.Ct. 190, 194, 86 L.Ed. 192 (1941) (footnote omitted).

448 U.S. 555, 575–76, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion) (third alteration in original). Chief Justice Burger's plurality opinion also noted that the affinity of this freedom "to the right of assembly is not without relevance." *Id.* at 577, 100 S.Ct. 2814. This analysis was embraced (and expounded upon further) by a majority of the Supreme Court in *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 603–07, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982), which also noted that "in the broadest terms, public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Id.* at 606, 102 S.Ct. 2613.[4]

### b. The Scope of the First Amendment Right in Criminal and Civil Cases

"While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." *Stone*, 855 F.2d at 180–81; *see also Wash. Post*, 386 F.3d at 575. Although the "right to access in any given case may vary depending on the nature of the case and the specific item under review," and questions of this sort tend to

4. This Court notes, of course, that this First Amendment guarantee of access to members of the public runs in parallel with, but remains distinct from, the Sixth Amendment's guarantee of a public trial to criminal defendants. *See, e.g., Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 379–91, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (holding that the Sixth Amendment's guarantee of a public trial is personal to the defendant and does not confer any independent constitutional right upon members of the public to attend such trial); *accord Richmond Newspapers*, 448 U.S. at 564, 100 S.Ct. 2814.

arise more frequently in criminal contexts, the foregoing principles justifying public access apply equally to civil litigation. *Wash. Post,* 386 F.3d at 576–77; *see also Pittston Co. v. United States,* 368 F.3d 385, 406 (4th Cir.2004); *Rushford,* 846 F.2d at 253. Consequently, in addition to transcripts and materials relating to criminal plea and sentencing hearings—*see, e.g., In re Wash. Post Co.,* 807 F.2d 383, 390 (4th Cir.1986)—the Fourth Circuit has determined "that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case." *Rushford,* 846 F.2d at 253. In reaching this conclusion, the Fourth Circuit cited *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1067–71 (3d Cir.1984), for the proposition that "the First Amendment guarantees to the public and to the press the right of access to criminal and civil trials," and *In re Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir.1984), for the proposition that "the policy reasons for granting public access to criminal proceedings apply to civil cases as well." The Fourth Circuit also noted Chief Justice Burger's observation in *Richmond Newspapers,* 448 U.S. at 580 n. 17, 100 S.Ct. 2814, that although "the question of whether the public has a right of access to civil trials was not before the Court [in that case] ... 'historically both civil and criminal trials have been presumptively open.'" *Rushford,* 846 F.2d at 253 n. 4; *see also Wash. Post,* 386 F.3d at 580 (citing cases for the proposition that "proceedings in civil cases are traditionally open"). By way of limitation, however, the Fourth Circuit also noted that "we have never held that the public has a First Amendment right of access to a pretrial hearing on a non-dispositive civil motion or to the transcript of such a hearing." *Wash. Post,* 386 F.3d at 580.

### c. The Scope of the First Amendment Right at Trial

██ It is, in any case, clear that the stronger First Amendment guarantee of public access, with its attendant requirement to weigh competing interests, applies where efforts are made to seal documents offered into evidence before a court in the course of a public jury trial. *See Pittston Co. v. United States,* No. Civ. A. 3:97CV294, 2002 WL 32158052, at *2 (E.D.Va. Oct. 2, 2002), *aff'd,* 368 F.3d 385, 406 (4th Cir.2004) (for First Amendment purposes, "[a]nalytically, materials filed in conjunction with a summary judgement motion are no different than materials actually mentioned in court or entered into evidence."); *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.,* No. 1:05CV01031, 2008 WL 451568, at *1 (M.D.N.C. Jan. 16, 2008) (noting that when Rule 26(c)(7) [now Rule 26(c)(1)(G) ] of the Federal Rules of Civil Procedure "is applied to seal documents used in trial or in dispositive motions ... a 'rigorous First Amendment standard' applies to protect the public's right to access") (citing *Wash. Post,* 386 F.3d at 576). Indeed, another Judge of this Court has held that the First Amendment guarantee can, in certain circumstances, even extend to demonstrative exhibits not actually entered into evidence, but simply used in an open hearing on a dispositive motion. *See Rambus, Inc. v. Infineon Techs. AG,* No. Civ. A. 3:00CV524, 2005 WL 1081337 (E.D.Va. May 6, 2005).

### d. Balancing the First Amendment Right with Countervailing Interests

██ When a court determines that a particular document sought to be sealed is subject to the First Amendment's presumptive right of access, the court must weigh and balance the competing interests,

much as it does in connection with the common law right. *Wash. Post,* 386 F.3d at 576. However, where the First Amendment right of access is implicated, a more stringent standard governs this balancing. The First Amendment "presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values." *Press–Enter. Co. v. Super. Ct. of Cal., Riverside County ("Press–Enterprise I "),* 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *accord Press–Enter.,* 478 U.S. at 9–10, 106 S.Ct. 2735; *Knight,* 743 F.2d at 233–34 (quoting the foregoing quoted text from *Press–Enterprise I* ).

### e. The First Amendment Right and Compelling Governmental Interests

In the more frequently-encountered case in which a governmental entity "attempts to deny the [First Amendment] right of access in order to inhibit the disclosure of sensitive information, it must be shown [to the court] that the denial is necessitated by a compelling governmental interest." *Globe Newspaper,* 457 U.S. at 606–07, 102 S.Ct. 2613; *accord Press–Enter.,* 478 U.S. at 15, 106 S.Ct. 2735; *Press–Enter.,* 464 U.S. at 510, 104 S.Ct. 819; *Wash. Post,* 386 F.3d at 575; *Stone,* 855 F.2d at 180. Even when a court finds a party (or non-party) to have carried its burden in this connection, the court must fashion relief that is narrowly tailored to serve the compelling governmental interest presented. *Press–Enter.,* 478 U.S. at 15, 106 S.Ct. 2735; *Wash. Post,* 386 F.3d at 575; *Stone,* 855 F.2d at 180.

### f. The First Amendment Right and Non–Governmental Interests

However, even in cases in which non-governmental parties (or, as here, non-parties) assert only countervailing *private* interests, several courts have also recognized that, in limited circumstances, certain such private interests might also implicate higher values sufficient to override (or, in an alternative mode of analysis, to except the proceeding or materials at issue from) the First Amendment presumption of public access. The U.S. Court of Appeals for the Third Circuit observed in this connection that such an "overriding interest can involve the content of the information at issue, the relationship of the parties, or the nature of the controversy." *Publicker,* 733 F.2d at 1073. Similarly, in *In re Iowa Freedom of Information Council,* the U.S. Court of Appeals for the Eighth Circuit rejected the argument that only compelling *governmental* interests can override the First Amendment right of access. 724 F.2d 658, 664 (8th Cir.1983).

### i. the right to a fair trial and individual privacy rights

Perhaps the most clearly articulated examples of such an overriding non-governmental interest in the First Amendment context are a criminal defendant's Sixth Amendment right to a fair trial and the individual constitutional right to privacy. *See Press–Enter.,* 478 U.S. at 9 n. 2, 106 S.Ct. 2735 (acknowledging that both an accused's Sixth Amendment right to a fair trial and the "interests of those other than the accused," such as the privacy interests of "victims of sex crimes . . . may justify closing certain aspects of a criminal proceeding") (citing *Globe Newspaper,* 457 U.S. at 607–10, 102 S.Ct. 2613); *Waller v. Georgia,* 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (acknowledging that an interest—advanced by the Georgia Supreme Court in affirming the state trial court decision below—"in protecting the privacy of persons not before the court" might, "[u]nder certain circumstances . . . justify closing portions of a suppression hearing to the public"); *Press–Enter.,* 464

U.S. at 510, 511 n. 10, 104 S.Ct. 819 (acknowledging that, where there are sufficient findings by the trial court, "in some limited circumstances, closure may be warranted" by either the Sixth Amendment or the privacy interests of prospective trial jurors involved in *voir dire*).

Although several circuit courts have acknowledged the relevance of such privacy rights in this connection, and even appear to have extended their applicability into the realm of civil litigation, their respective modes of analysis appear to vary. *See, e.g., Davis v. E. Baton Rouge Parish Sch. Bd.,* 78 F.3d 920, 929 (5th Cir.1996) (concluding that a district court's "gag" order prohibiting a school board's members, employees, and attorneys from publicly commenting, orally or in writing, on the drafting of school desegregation plans was "not justified, on the record, by any important governmental *or countervailing individual right*" and therefore had to be vacated as unconstitutional for violating the First Amendment rights of news agencies) (emphasis added); *United States v. Biaggi (In re New York Times Co.),* 828 F.2d 110, 116 (2d Cir.1987) (in deciding whether to unseal certain pretrial motion materials in a criminal case, noting that "[c]ertainly, the privacy interests of innocent third parties as well as those of defendants that may be harmed by disclosure ... should weigh heavily in a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted" and that "[t]he job of protecting such interests rests heavily upon the shoulders of the trial judge, since all the parties who may be harmed by disclosure are typically not before the court"); *but see Valley Broad. Co. v. U.S. Dist. Court for the Dist. of Nev.,* 798 F.2d 1289, 1293–94 (9th Cir.1986) (noting that, *inter alia,* " 'residual privacy rights' " would "counsel[ ] against such access" under the common law analysis, but also

denying there to be any "constitutional dimension" to the "right to copy and inspect the judicial records in" a criminal trial) (quoting *United States v. Criden,* 648 F.2d 814, 830 (3d Cir.1981) (Weis, J., concurring and dissenting)); *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n,* 710 F.2d 1165, 1176, 1179–80 (6th Cir.1983) (acknowledging that both "the First Amendment and the common law ... limit judicial discretion" with respect to sealing court documents, but apparently characterizing "certain privacy rights of participants or third parties" only as "content-based exceptions to the right of access," which is one category of the "several distinct but limited *common law* exceptions to the strong presumption in favor of openness") (emphasis added).

### ii. property rights in trade secrets

In addition to the constitutional rights to a fair trial and to privacy discussed above, many courts have suggested that other private interests might, depending on the circumstances of the case, suffice to override the strong First Amendment presumption of public access. One such private interest is a person or corporate entity's property interest in its trade secrets. Trade secrets, as a general matter, are accorded special protection from public disclosure in discovery in civil litigation. *See, e.g.,* Fed.R.Civ.P. 26(c)(1)(G) (providing that a protective order entered by a court may "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"). As the Eighth Circuit explained in *In re Iowa,* "[t]rade secrets are a peculiar kind of property" because "[t]heir only value consists in their being kept private." 724 F.2d at 662. Accordingly, many courts have considered the trade secret status of testimony or materials submitted to a

court a significant private interest to be weighed against the common law, or even the First Amendment, right of public access that would otherwise apply to them. *Compare Valley Broad.*, 798 F.2d at 1294 (assessing tests adopted by various circuit courts and noting that, *inter alia*, the presence of "trade secret materials" would "counsel[ ] against such access" under the common law analysis); *Brown & Williamson*, 710 F.2d at 1179–80 (noting that "[c]ourts have carved out several distinct but limited common law exceptions to the strong presumption in favor of openness," including "trade secrets," which are "a recognized exception to the right of public access to judicial records") *with Publicker*, 733 F.2d at 1070–71, 1073 (citing *Stamicarbon, N.V. v. American Cyanamid Co.*, 506 F.2d 532, 539–42 (2d Cir.1974), for the proposition that one of the "exceptions to the presumptive openness of judicial proceedings" is "the protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm" and citing *Zenith Radio Corp. v. Matsushita Electrical Industrial Co.*, 529 F.Supp. 866, 890 (E.D.Pa.1981), for the proposition that "an interest in safeguarding a trade secret may overcome a presumption of openness" even when otherwise guaranteed by the First Amendment right of access); *In re Iowa*, 724 F.2d at 664 (holding that a private party's property interests in its trade secrets sufficed to override the media's First Amendment right of access).

In analyzing the trade secret issue, and ultimately reaching the conclusion that it sufficed to override even the First Amendment right of access in *In re Iowa*, the Eighth Circuit stressed that the case before it only involved "private commercial conduct" that did not appear to have any "substantial relation to an important governmental or political question." *In re Iowa*, 724 F.2d at 664. Consequently, although the Eighth Circuit emphasized that it was not "announcing a rule that the presence of trade secrets will in every case and at all events justify the closure of a hearing," because "trade secrets partake of the nature of property, the value of which is completely destroyed by disclosure," it concluded that "[w]here only private commercial interests or damage are involved, we think the law justifies [sealing portions of a contempt hearing transcript discussing trade secrets] to avoid the destruction of these property rights." *Id.*

Although the Fourth Circuit has not taken a position on this issue in any published decision, it did adopt the Eighth Circuit's rationale, with respect to the issue of trade secrets in this context, in an unpublished per curiam decision. *See Woven Elecs. Corp. v. Advance Group, Inc.*, 930 F.2d 913, 1991 WL 54118, *6–7 (4th Cir.1991) (table disposition). There, the Fourth Circuit noted that "[o]ther courts have specifically recognized an exception to the public's right of access when a case involves trade secrets." *Id.* at *6 (citing *Valley Broad.*, 798 F.2d at 1294; *In re Iowa*, 724 F.2d 658; *Brown & Williamson*, 710 F.2d at 1180). The Fourth Circuit continued to cite the analysis of *In re Iowa* extensively and, although it followed that case in emphasizing that it was "not announcing a blanket rule that the presence of trade secrets will in every case and at all events justify the closure of a hearing or trial," it acknowledged that such action by the district court would be appropriate in certain circumstances. *Id.* at *6.[5]

5. Although the concerns voiced by Savvis in support of the *instant motion* appear to be most analogous to those implicated in cases involving trade secrets, the Court must note that no issue of trade secrets was raised by Savvis or Savvian in the instant motion, or,

### iii. other private interests

At least one court has suggested that other private interests, based not on the content of the material to be sealed, but instead on the relationship between the parties, might also have the potential to override even the stronger First Amendment presumptive right of public access. *See, e.g., Publicker,* 733 F.2d at 1073–74. For example, proceedings (or materials) relating to an attorney-client relationship or confidential attorney-client communications, or cases involving contractual non-disclosure provisions, might properly be closed (or sealed) by a court in some circumstances. *Id.*

### g. Overriding the First Amendment Right

■ Whatever the source or nature of the asserted countervailing interest, when a court seeks to predicate an order overriding the First Amendment presumption of public access on such an interest, the court must clearly articulate why it believes the interest suffices to override the presumption "along with findings specific enough that a reviewing court can determine whether the closure [or sealing] order was properly entered." *Press–Enter.,* 464 U.S. at 510, 104 S.Ct. 819. Regardless of whether the source of the asserted countervailing interest is governmental or non-governmental, "[t]he burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Wash. Post,* 386 F.3d at 575. Moreover, as with cases implicating compelling governmental interests, even when a court finds a private party to have carried its burden in this connection, the court must fashion relief

that is narrowly tailored to serve the overriding interest presented. *Press–Enter.,* 464 U.S. at 510, 104 S.Ct. 819; *accord Globe Newspaper,* 457 U.S. at 606–07, 102 S.Ct. 2613; *Press–Enter.,* 478 U.S. at 10, 15, 106 S.Ct. 2735; *Wash. Post,* 386 F.3d at 575; *Stone,* 855 F.2d at 180.

### h. Waiver of Objections to Public Access to Documents Used at Trial

■ Notwithstanding the need to weigh the competing interests when an effort is made to seal a document *in advance of or contemporaneously with* its use or filing with a court, an entity seeking to seal such document *after* its use or admission can be held to have waived its right to assert a continuing interest in the document in opposition to the presumptive right of access. "It is a 'well-established principle of American jurisprudence that the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its further use.'" *Glaxo Inc. v. Novopharm Ltd.,* 931 F.Supp. 1280, 1301 (E.D.N.C. 1996), *aff'd,* 110 F.3d 1562, 1572 (Fed.Cir. 1997) (citing *Nat'l Polymer Prods. v. Borg–Warner Corp.,* 641 F.2d 418, 421 (6th Cir.1981); *Littlejohn v. BIC Corp.,* 851 F.2d 673, 680 (3d Cir.1988); *Cont'l Ill.,* 732 F.2d at 1314–15); *see also Rushford,* 846 F.2d at 252 (the Fourth Circuit noting that appellee there "acknowledged that if the case had gone to trial and the documents were thereby submitted to the court as evidence, such documents would have been revealed to the public and not protected under the [Protective] Order" in that case); *cf. In re Time Inc.,* 182 F.3d 270, 272 (4th Cir.1999) (in connection with a

indeed, at any time while this case was pending before this Judge, including during the jury trial in this matter. Moreover, as noted

above, no party or non-party sought to close any portions of the trial.

motion by news organizations to unseal documents that were filed as exhibits in a criminal defendant's pretrial motions, "the need for review of sealed documents is moot to the extent they have been disclosed during trial").

Where confidential documents submitted under a protective order were admitted in open court without objection, the Third Circuit held that the "failure to object to the admission into evidence of the documents, absent a sealing of the record, constituted a waiver of whatever confidentiality interest might have been preserved under the [protective order]."

*Glaxo,* 931 F.Supp. at 1301 (citing *Littlejohn,* 851 F.2d at 680 (alteration in original)).[6]

## C. Timing and Presentation Posture of the Instant Motion

Turning from the law generally applicable to motions to seal documents to the specific circumstances of this case, the Court notes as a preliminary matter that it remains somewhat perplexed by certain aspects of both the instant motion and Level 3's opposition to it. Although Level 3 advised Savvis prior to the commencement of trial in this matter that it intended to use Savvis and/or Savvian documents at

trial, it does not appear that Savvis responded to indicate its desire to keep such documents under seal until *after* the first day of trial had already concluded.[7] Level 3's reply early the following morning unequivocally rejected Savvis's request, and Level 3 did, in fact, introduce several such documents into evidence during the course of the trial without advising this Court of Savvis's request in this connection. It does not appear that anyone (*e.g.,* outside or in-house counsel, or corporate representatives) attended the trial or otherwise sought to intervene on Savvis's behalf during the trial to make its request known to the Court. Instead, Savvis waited until nearly three weeks *after* the jury's verdict to file the instant motion.

Considering that Savvis evidently considers the confidentiality of these documents to be important enough to warrant post-judgment motion practice, it is curious that Savvis did not make any effort to raise these issues during trial, when they properly should have been raised. The Court is, of course, mindful of the costs associated with maintaining even a minimal courtroom presence throughout the entire course of a multi-week trial. However, as the Fourth Circuit noted in *Rushford,* "the district court must address the

---

**6.** In *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 418 (4th Cir.1999), the Fourth Circuit rejected the contention that a party inadvertently leaving an unsealed document containing trade secrets in a court's public case files after the conclusion of a litigation, by itself, would suffice to destroy the trade secret status of the document's contents. Instead, the Fourth Circuit looked to the analysis in *Religious Technology Center v. Lerma,* 908 F.Supp. 1362 (E.D.Va.1995), in which the court determined that materials that "had been in a public court file ... for a total of 28 months" *and* "were posted on the Internet" could no longer be considered trade secrets. *Id.* at 1368. Although admittedly not directly on point, *Hoechst* does seem to suggest that *inadvertent* public filing of a doc-

ument with a court does not immediately or automatically destroy all future interests a party might have in the document. As discussed in further detail below, in the instant case, it appears clear that there was no such inadvertence; Savvis clearly had advance notice that its documents were going to be offered into evidence without any request by the parties to seal them, and took no advance or contemporaneous action to address the issue.

**7.** The Court acknowledges, of course, that neither trial exhibit currently at issue was, in fact, used or offered into evidence on that first day of trial; indeed, that day was consumed entirely by jury selection and other preliminary matters.

question at the time it grants a [disposi-tive] motion and not merely allow contin-ued effect to a pretrial discovery protective order." 846 F.2d at 253. Moreover, any purported reliance by Savvis on the Stipu-lated Protective Order in this case was clearly unfounded, not least because "[t]he reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judi-cial documents." *Id.* at 254. In short, Savvis should have brought this issue to the Court's attention at the time the exhib-its were offered into evidence at trial. It did not.

Also perplexing is Level 3's opposition to the instant motion. Level 3 has not claimed any potential prejudice from the requested sealing in this case, which has already been resolved by a jury verdict finding neither infringement nor invalidity. It does not appear that it would affect in any way Level 3's pending motion for a new trial pursuant to Rule 59 of the Fed-eral Rules of Civil Procedure or any ap-peal that Level 3 might choose to seek. Moreover, Level 3's opposition does not appear to be premised on the applicable case law (*i.e.,* arguing that, as a matter of law under the First Amendment right of public access, the trial exhibits may not be sealed), but instead merely provides rea-sons why it believes, as a factual matter, that Savvis has no reason to be concerned that the trial exhibits at issue are now publicly available.

As one can easily deduce from the fore-going, this issue presents itself to the Court in a somewhat unusual posture. Such issues more typically arise in the context of motions by newspapers or other journalistic entities for courts to *unseal* materials relating to high-profile criminal investigations, prosecutions, or civil mat-ters of public or media interest that were

not previously made available to the pub-lic. Here, however, the Court is faced with precisely the opposite request: name-ly, a motion filed after the fact to *seal* documents that were *already* offered and entered into evidence, without objection, in the course of an open, public civil jury trial. Although the instant motion was not accompanied by media fanfare, it neverthe-less confronts the Court with an issue of considerable significance to individuals and corporate entities alike: the confidentiality of documents provided pursuant to a civil discovery request in litigation in which the producing person or entity is not otherwise involved or interested. Since, for reasons discussed more fully below, the issue of the timing of Savvis's motion is antecedent to the Court's substantive determination of the source of the right of access that gov-erns the documents currently at issue, the Court will begin its analysis of the instant motion by discussing the confidentiality status of those documents at various points in this litigation.

### 1. Pre–Trial Status of the Documents Currently at Issue

Issues of confidentiality of discovery ma-terials during the pre-trial stages of litiga-tion are, of course, typically dealt with by means of protective orders jointly stipu-lated by parties and entered by courts pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Such was the case here: a Stipulated Protective Order was agreed to by the parties and entered on May 7, 2008 (Docket No. 26; the "Or-der"). The Order indicates that it "shall govern the handling of discovery material ... exchanged by and among the parties and any non-parties to the" case. Order at preamble, p. 1. The Order's definition of a "Producing Party" includes "any nonpar-ty who produces or discloses confidential or proprietary information in the" case. Order ¶ 2. The Order elsewhere reiterates

that "[i]f either party seeks discovery from a third party, that third party shall be entitled to all of the benefits that a Producing Party has under the terms of this Order." Order ¶ 32. It further provides that any "nonparty may designate as confidential, in whole or in part, any document . . . which contains confidential information to be disclosed to a party in the" case, and describes three different levels of confidentiality designation, all of which constitute "Protected Litigation Material." Order ¶ 3. The Court notes that all of the pages of the exhibits at issue in the instant motion were produced with the intermediate confidentiality designation, "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY," as contemplated by ¶ 7 of the Order. The Order provides that material may be given that designation

> only if such material constitutes or contains, in whole or in part, information which the party reasonably believes will harm its competitive position if it becomes known to a party other than the Producing Party including, for example, information describing or otherwise relating to network architecture, functionality or technology currently used to provide such product or service offerings.

Order ¶ 5.

Paragraph 16 of the Order outlines the procedure for a party to challenge the confidentiality designation of any material. It does not appear that Level 3, either in its opposition brief or at any other time in this case, challenged the confidentiality designation of the documents at issue in the instant motion. Nor could it have, assuming the accuracy of Savvis's uncontradicted claim that it "sought and received assurances from Level 3 that it would not object to the designation of documents as 'Highly Confidential—Attorneys Eyes Only' under the Protective Order."

Mot. Mem. at 3. The Order also outlines the procedures to be followed for parties (1) to file under seal "any Confidential Material, or any papers containing or making reference to the contents of such Confidential Material, in any pleading or document filed with the Court in this litigation" and (2) to move "that the Court enter an order permitting [such] document to remain under seal." Order ¶¶ 20–21.

### 2. Trial and Post–Trial Status of the Documents Currently at Issue

On the basis of the foregoing, it seems clear that Savvis was justified in its asserted expectation that the documents produced in response to Level 3's subpoena "would be fully protected" from public disclosure by the Order—at least during the pre-trial stages of the litigation. Mot. Mem. at 2. As noted above, the exhibits at issue in the instant motion were designated "HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY." The use of this designation, of course, *de facto* put the parties on notice that Savvis believed public disclosure of these documents would harm its competitive position. *See* Order ¶ 5. However, the Court's analysis may not stop there, because the foregoing does not address whether the Order could be relied upon to protect documents used at trial. In this connection, the Order relevantly provides:

> In the event that any material or information designated as Protected Litigation Material is to be used in any court proceeding in connection with the Litigation, the party that intends to use it shall take all steps reasonably required to protect its confidentiality during such use. The parties shall address the use of Protected Litigation Material at trial during the Final Pretrial Conference.

Order ¶ 27. Although other interpretations might be argued for, the Court be-

lieves the appropriate and most sensible reading of the foregoing passage would construe the former of the two quoted sentences as applying only to pre-trial proceedings, and the latter as expressly reserving the issue of use at trial for the Final Pretrial Conference. Accordingly, although Savvis reasonably relied on the Order to protect the documents they produced from public disclosure prior to trial, the clear language of the Order put Savvis on notice that any use of its documents at trial was *not* covered by the terms of the Order, but instead would be determined at the Final Pretrial Conference in this matter.

Savvis apparently made no attempt to intervene in or even attend the Final Pretrial Conference to learn (or potentially influence) how the parties intended to use confidential materials at trial.[8] Moreover, as noted above, despite Level 3's explicit refusal to, in effect, do Savvis's job for it with respect to preserving the confidentiality of Savvis and Savvian documents used at trial, Savvis appears to have made no effort whatsoever to attend or intervene at any point during the trial, or even immediately thereafter.

### 3. Waiver of Confidentiality Interest and Objections to Claims of Right to Access

■ Having determined that Savvis failed to apprise the Court of its concerns about the continued confidentiality of the exhibits currently at issue prior to their entry into evidence at trial, the Court next must determine whether such omission operated as a waiver of any further claim of confidentiality of such exhibits. In this connection, the Court finds that the circumstances surrounding the instant motion appear similar in meaningful ways to the situation that faced the district court in *Glaxo:*

> After the first trial, Glaxo belatedly realized the impact of having submitted its exhibits without seal, and moved to have those exhibits sealed and returned. The Court ruled that since the exhibits were "admitted without qualification ... they are matters of public record and shall be handled as such under the normal practices of this court involving the collection, retention and dissemination of trial exhibits." ... [T]he fact that such exhibits were readily available to, and perused by, the public, nullifies any confidentiality interests in those exhibits and the information they contain. If Glaxo's information was not generally known or readily ascertainable, it certainly was not "the subject of efforts that [were] reasonable under the circumstances to maintain its secrecy."

*Glaxo,* 931 F.Supp. at 1301–02 (internal citations omitted). This Court finds the *Glaxo* court's reasoning instructive in this connection. Savvis was fully aware that certain of its documents, explicitly including one of the exhibits currently at issue, were going to be offered into evidence at trial. Moreover, unlike Glaxo, the email correspondence between Savvis and Level 3 shows that Savvis did not "belatedly

---

8. The Court notes as an aside that, contrary to this language in the Order, it appears that the parties, in fact, did not address this issue at the December 30, 2008 Final Pretrial Conference or, for that matter, in the Final Pretrial Order submitted to and entered by the Court on that same day. Nevertheless, Savvis was unequivocally apprised of the parties' position with respect to this issue prior to Level 3 offering the exhibits at issue into evidence at trial. As noted above, Level 3's January 7, 2009 email reply to Savvis clearly indicated that "neither party in the case is seeking to put any of the trial exhibits or testimony under seal, and we are unable to comply with your request to do so for the Savvis/ Savvian documents and testimony." Opp'n at 2 n. 1, Ex. C.

realize[ ] the impact" of this fact. Instead, Savvis's request to Level 3 demonstrates its awareness of—and concerns about—the issue of confidentiality *prior to* the commencement of trial, and Level 3's response explicitly notified Savvis of Level 3's unwillingness to comply with that request. Despite the foregoing, Savvis chose not to take any action on its own behalf to raise this issue prior to or contemporaneously with the exhibits at issue being offered and entered into evidence at trial.

In analyzing this issue, the Court has also found particularly instructive the recent *Rambus* opinion by Judge Payne, of this Court. In that opinion, which granted an intervenor's motion for access to certain demonstrative exhibits that had been used in open court in a hearing on the defendant's motion to dismiss a patent infringement case, the court determined that "demonstrative exhibits ... not submitted into evidence [that] were tendered to the Court for use in deciding dispositive motions and [that] were used in a hearing that was open to the public" constituted "part of the public record" in a civil case. *Rambus*, 2005 WL 1081337, at *1. The court there explained that this was true notwithstanding the fact that the underlying documents had previously been treated as confidential pursuant to the joint stipulated protective order in the case. *Id.* at *2. The court there further found that the public release of the documents at that motion hearing, coupled with their subsequent admission into evidence at a later hearing on another issue, "effectively moot[ed] any argument that the documents retained any protected status following" the motion hearing. *Id.* This conclusion, of course, comports with the Fourth Circuit's observations in *Rushford* that although "[t]he mere existence of a First Amendment right of access or of a common law right of access to a particular kind of document does not entitle[ ] the

press and the public to access in every case" and "there may be instances in which discovery materials should be kept under seal even after they are made part of a dispositive motion," for a party "to invoke such a judicial protection ... the district court must address the question at the time it grants a summary judgment motion and not merely allow continued effect to a pretrial discovery protective order." 846 F.2d at 253.

Here, of course, the proper time for the Court to have addressed any such requests for further judicial protection of the exhibits at issue in the instant motion would have been prior to trial, or at trial—at the time when they were offered into evidence. This Court, consistent with the reasoning of other courts faced with similar circumstances, believes that Savvis's failure to raise this issue prior to or at that time— or, indeed, at any point before filing the instant motion nearly three weeks after the jury's verdict and entry of judgment— constitutes a waiver of any objections to any First Amendment (or, for that matter, common law) right of access to the exhibits. *Glaxo*, 931 F.Supp. at 1301 (citing *Littlejohn*, 851 F.2d at 680); *cf. In re Time*, 182 F.3d at 272. The First Amendment public right of access to these exhibits sprang into existence upon their being offered into evidence for the jury's consideration at trial, and since no request was made to seal them prior to or at that time, Savvis waived any future right to assert any competing interest to be weighed by the Court and, thus, any objection to the public availability of the exhibits in the Court's files.

### D. The Right of Access Applicable to the Documents Currently at Issue

██ Even if this Court were to conclude that Savvis had not waived its right to assert continuing confidentiality interests

in the trial exhibits, it does not appear that Savvis could assert any interest sufficient to prevail on the merits. As noted above, prior to trial in this matter, it appears that the documents currently at issue were merely " 'raw fruits of discovery,' " still subject to the protections of the Order and, because discovery " 'is ordinarily conducted in private,' " they stood " 'on a wholly different footing than' " exhibits supporting " 'a motion filed by a party seeking action by the court,' " or, as here, offered by a party into evidence at trial. *Wash. Post,* 386 F.3d at 576 (quoting *Rushford,* 846 F.2d at 252). However, it appears clear from the precedent and persuasive authority discussed above that, when the documents currently at issue were offered into evidence for the jury's consideration at trial, they became, simply by virtue of that event, subject to the public right of access guaranteed by the First Amendment. *See Wash. Post,* 386 F.3d at 576; *In re Time,* 182 F.3d at 272; *Rushford,* 846 F.2d at 252; *Rambus,* 2005 WL 1081337, at *3; *Pittston,* 2002 WL 32158052, at *2, *aff'd,* 368 F.3d at 406; *Walter Kidde,* 2008 WL 451568, at *1; *Glaxo,* 931 F.Supp. at 1301, *aff'd,* 110 F.3d 1562. In discussing the Fourth Circuit's decisions in *Virginia Department of State Police v. Washington Post* and *Stone* in this connection, the *Rambus* court emphasized that the demonstrative exhibits at issue there were not "merely part of the sealed file" in the case, but instead "already had been displayed in open court" and were "used by the Court in considering the arguments and in reaching its decision." *Rambus,* 2005 WL 1081337, at *3. Therefore, the *Rambus* court concluded that access to the demonstrative exhibits at issue was protected by the First Amendment, and that their "previous public use effectively stripped the documents of any protection under the protective order." *Id.; see also Rushford,* 846 F.2d at 252. In the instant case, the analysis and conclusion are much the same.

## E. The Reasons Offered by Savvis in Support of Its Motion to Seal

The Court is by no means unmindful of the concerns voiced by Savvis in connection with the continued public availability of these documents as part of the judicial record in this case. In its memorandum in support of the instant motion, Savvis claims, on the basis of an accompanying exhibit from the Vice President and Associate General Counsel of Savvis, that the trial exhibits at issue "could potentially provide information to a malefactor seeking to damage Savvis' network, or allow a customer or potential customer to use confidential information about charges to other customers in negotiations for itself." Mot. Mem. at 5. They also allegedly could "give assistance to a competitor in several ways, including for example by revealing information about locations of Savvis' strengths and weaknesses, permitting the targeting of vendors based on knowledge of their relationships with Savvis, and learning Savvis's costs for the provision of certain types of services." *Id.* Savvis claims more specifically in its rebuttal brief that "PX–2065 reveals certain terms of contracts that were confidential at the time they were entered into and that have still been kept confidential by Savvis as of the present." Savvis's Rebuttal Brief in Support of Motion to Intervene and to Seal Certain Trial Exhibits Produced by Non-Party (Docket No. 489; "Rebuttal") at 3. Savvis further claims that "PX–0020 contains confidential technical details (such as peering maps, vender identities and locations) that would be of potential use to a person who wanted to cause physical harm to Savvis' current network." *Id.*

## F. Weighing the Competing Interests

Had no waiver occurred here, the Court, having determined that the stronger First

Amendment right of public access applied to the exhibits currently at issue, would normally proceed to "weigh the appropriate competing interests." *Wash. Post,* 386 F.3d at 576. Although the Court has concluded that Savvis has waived any right to assert a continuing confidentiality interest in the exhibits, recognizing that this could become an issue on appeal, the Court will assume here that no waiver took place and proceed to assess Savvis's ability to assert a sufficient competing interest.

■■■ As a preliminary matter, the Court acknowledges that, if the exhibits at issue here had *not* fallen within any of the specific categories of materials in civil cases to which the First Amendment guarantee of public access applies (*e.g.,* if they had instead only been used in a hearing on a non-dispositive civil motion—*see id.* at 580), the foregoing concerns voiced by Savvis might well have convinced the Court that the common law balance of interests weighed heavily in favor of sealing the exhibits. *See id.; Stone,* 855 F.2d at 180–81. Issues of timeliness and potential waiver would, of course, still apply. However, in situations implicating only the common law right of access, courts may consider a relatively wide range of *private* interests, such as those articulated here by Savvis, in weighing the competing interests. *See, e.g., Nixon,* 435 U.S. at 589, 597–98, 98 S.Ct. 1306. The exhibits at issue here allegedly reveal confidential commercial information arguably within the meaning of Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and, moreover, they do not currently appear to be the subject of any asserted public interest. Consequently, had only a common law right of access applied, this Court might well have determined, in its sound discretion, that it was both possible and appropriate to seal the exhibits at issue.

As concluded above, however, in this case the exhibits at issue were offered into evidence in the course of a public jury trial. This act of offering them to the jury for consideration in deciding the instant case made them subject to the First Amendment right of access. Consequently, assuming no waiver, "weigh[ing] the appropriate competing interests"—*Wash. Post,* 386 F.3d at 576—at the time they were first offered into evidence at trial *or* after the fact, would be limited to determining if sealing the exhibits, as Savvis has requested, is justified by "an overriding interest based on findings that closure is essential to preserve higher values." *Press–Enter.,* 464 U.S. at 510, 104 S.Ct. 819; *accord Press–Enter.,* 478 U.S. at 9–10, 106 S.Ct. 2735; *Knight,* 743 F.2d at 233–34. In concrete terms, the Court would need to determine if such sealing is either "necessitated by a compelling governmental interest"—*Globe Newspaper,* 457 U.S. at 606–07, 102 S.Ct. 2613; *accord Press–Enter.,* 478 U.S. at 15, 106 S.Ct. 2735; *Press–Enter.,* 464 U.S. at 510, 104 S.Ct. 819; *Wash. Post,* 386 F.3d at 575; *Stone,* 855 F.2d at 180—or, perhaps, justified by a non-governmental interest that also implicates such "higher values." *See Press–Enter.,* 464 U.S. at 510, 104 S.Ct. 819; *Woven,* 930 F.2d 913, 1991 WL 54118 at *6–7; *Publicker,* 733 F.2d at 1073–74; *In re Iowa,* 724 F.2d at 664. In either case, the Court would also have to determine whether sealing the exhibits at issue would constitute a "narrowly tailored" solution designed "to serve that interest." *Press–Enter.,* 464 U.S. at 510, 104 S.Ct. 819; *accord Globe Newspaper,* 457 U.S. at 606–07, 102 S.Ct. 2613; *Press–Enter.,* 478 U.S. at 10, 15, 106 S.Ct. 2735; *Wash. Post,* 386 F.3d at 575; *Stone,* 855 F.2d at 180. In this case, there is no governmental interest implicated. Instead, it is a corporation's interest in its own business records that is asserted. Although Savvis consistently characterizes the "business and financial information" contained in the exhibits as "confidential" and "commercial-

ly sensitive"—*see, e.g.,* Mot. Mem. at 2— and cites Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure—*see* Mot. Mem. at 4—it does not anywhere claim that the exhibits at issue constitute trade secrets, which at least some courts apparently consider a possible exception even to the stronger First Amendment right of access. *Woven,* 930 F.2d 913, 1991 WL 54118 at *6–7; *Publicker,* 733 F.2d at 1073–74; *In re Iowa,* 724 F.2d at 664. Thus, it appears clear from the case law surveyed by the Court above that none of the interests advanced by Savvis are "appropriate" to be weighed in deciding whether to seal materials to which the public would otherwise have a right of access guaranteed by the First Amendment. *Wash. Post,* 386 F.3d at 576. In other words, Savvis's asserted private confidentiality interests, however legitimate, simply do not figure in the Court's analysis where the First Amendment guarantee is implicated. Consequently, although this Court, as previously noted, certainly does not seek to make light of Savvis's interest in the confidentiality of its business records, the utter lack of any asserted compelling governmental or private interest in sealing the exhibits at issue here effectively ends the First Amendment analysis, and leads inevitably to the conclusion that, even had no waiver occurred, the instant motion would have to be denied and the documents would have to remain in the public record in this case.[9]

### G. Public Notice and Other Elements of the Fourth Circuit's Governing Procedure

While Savvis has waived its right to assert any continuing interest in the exhib-

its currently at issue in opposition to the First Amendment right of public access, this Court, again recognizing the potential for appeal, will continue to assume here that Savvis had properly brought the instant motion and proceed to address the Fourth Circuit's public notice requirement. *See Wash. Post,* 386 F.3d at 576. The Court notes that notice of the instant motion was provided to the public by means of the Court's publicly-accessible electronic docketing system over two months prior to the issuance of this Opinion and Order. *See Stone,* 855 F.2d at 181 (indicating that to fulfill the public notice requirement of the Fourth Circuit's procedure, "individual notice is unwarranted," but "the court must notify persons present in the courtroom of the request, or docket it 'reasonably in advance of deciding the issue.'") (quoting *Knight,* 743 F.2d at 235). Here, of course, since this motion only came before the Court *after* trial, docketing was the most feasible method of providing notice.

With respect to the remainder of the Fourth Circuit's governing procedure, because Savvis waived any continuing interest in the confidentiality of the exhibits at issue by failing to object or otherwise seek to intervene prior to or at the time they were offered into evidence at trial, and because, even if that interest had not been waived, Savvis has not advanced, let alone demonstrated, any compelling governmental or private interest that might justify overriding the public's presumptive First Amendment right of access and sealing the documents, the Court need not extensively

---

9. Some courts have found there to be limits on how long documents, even if admitted into evidence at trial, can still properly be considered part of the judicial record to which the public has a First Amendment right of access. *See, e.g., Littlejohn,* 851 F.2d at 681–83 (con-

cluding that exhibits from a settled case with no appeal pending that had already been returned by the district court clerk to the parties "were no longer a part of the judicial record subject to presumptive public access"). *Cf. Hoechst,* 174 F.3d at 418–19.

consider whether any less drastic alternatives are available, let alone appropriate, in this case. Savvis notably fails to suggest any alternative courses of action with respect to the exhibits in its briefing, and the Court can think of no lesser remedy that would be appropriate here. Since the Court has determined that it will not seal the exhibits at issue, consideration of the remainder of the elements of the Fourth Circuit's procedure is unnecessary. *Wash. Post*, 386 F.3d at 576.

## III. CONCLUSION

On the basis of the foregoing, the Court **DENIES** Savvis's motion to intervene for the limited purpose of moving to seal trial exhibits PX–2065 and PX–0020. The Court therefore **VACATES** its prior Order of February 20, 2009 temporarily sealing such exhibits.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to the counsel of record for the parties and for non-party Savvis.

It is so **ORDERED**.